*United States v. Grant et al.*
Case No. 2:24-cr-00621-MWF
Defendants' Joint Motion to Disqualify, Dismiss,
Indictment, Vacate Scheduling Order, Reopen Pretrial
Hearings, and Hold Evidentiary Hearing, Based on Fifth and
Sixth Amendment Violations

# DEFENDANTS' GROUP EXHIBIT 1

DREW FINDLING
MARISSA GOLDBERG
The Findling Law Firm PC
3575 Piedmont Road
NE Tower 15, Suite 1010
Atlanta, GA 30305
Telephone: (404) 460-4500
Email: drew@findlinglawfirm.com
        marissa@findlinglawfirm.com

JONATHAN M. BRAYMAN
Breen & Pugh
53 W. Jackson Blvd., Suite 1550
Chicago, IL 60604
Telephone: (312) 360-1001
Email: jbrayman@breenpughlaw.com

CHRISTY O'CONNOR (Bar No. 250350)
The Law Office of Christy O'Connor
360 East 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (323) 716-5959
Email: christy@christyoconnorlaw.com

Attorneys for Defendant
DURK BANKS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>          Plaintiff,<br><br>    v.<br><br>DURK BANKS et al.,<br><br>          Defendants. | Case No. 2:24-cr-00621-MWF<br><br>**DECLARATION OF**<br>**JONATHAN M. BRAYMAN** |

I, Jonathan M. Brayman, hereby declare as follows:

1.      I am an attorney licensed to practice law in the State of Illinois and in this District *pro hac vice*. I am a partner with the law firm of Breen & Pugh, in Chicago, Illinois. I am one of Defendant Durk Banks' attorneys, along with my co-counsel Drew Findling, Marissa Goldberg, and Christy O'Connor.

2.      I make this declaration of my own personal knowledge and based on my review of correspondence, court filings, and discovery produced by the government.

3.      If called as a witness, I could and would testify competently to the facts stated herein.

4.      This declaration is submitted as part of Defendants' Group Exhibit 1, in support of Defendants' Joint Motion to Disqualify, Dismiss Indictment, Vacate Scheduling Order, Reopen Pretrial Hearings, and Hold Evidentiary Hearing, Based on Fifth and Sixth Amendment Violations.

5.      I have represented Mr. Banks in this matter since October 2024 and have attended every court hearing held in the United States District Court for the Central District of California in this matter, including Mr. Banks' arraignment hearings, detention hearings, and a pretrial motion hearing on Mr. Banks' motion to produce grand jury transcripts (which was joined by Defendant Deandre Wilson).

6.      This case is assigned to Judge Michael W. Fitzgerald and Magistrate Judge Patricia Donahue, who are the judges who have presided over the court hearings described in ¶ 5.

7.      Assistant United States Attorneys (AUSAs) Ian V. Yanniello, Daniel H. Weiner, and Gregory Staples are the prosecutors assigned to this matter. AUSAs Yanniello, Weiner, and Staples are all AUSAs assigned to the United States Attorney's Office in the Central District of California.

8.      AUSA Yanniello and AUSA Weiner are assigned to the Western Division (based on Los Angeles, California) office of the United States Attorney's Office for the Central District of California (USAO-CDCA). AUSA Staples is assigned to the Southern Division office (based in Santa Ana, California) of the USAO-CDCA.

9.      AUSA Yanniello is currently the Chief of the National Security Division of the USAO-CDCA.

10.      On November 14, 2024, I appeared for Mr. Banks' arraignment in the Central District of California, along with my co-counsel Christy O'Connor. Magistrate

Judge Patricia Donahue presided during this court hearing. During the hearing, Magistrate Judge Donahue arraigned Mr. Banks on the First Superseding Indictment, and issued an order under Federal Rule of Criminal Procedure 5(f) concerning the prosecution team's disclosure obligations. (Dkt. 47). AUSA Daniel Weiner was in court for this hearing and orally acknowledged Magistrate Judge Donahue's order in open court.

11.    On December 12, 2024, I appeared for Mr. Banks' detention hearing in the Central District of California, along with my co-counsel Drew Findling, Marissa Goldberg, and Christy O'Connor. During this hearing, Magistrate Judge Donahue presided over the hearing and entered a detention order orally from the bench (Dkt. 114) and later entered a written order (Dkt. 116).

12.    On May 8, 2025, I appeared for Mr. Banks' detention hearing and arraignment hearing in the Central District of California, along with my co-counsel Drew Findling and Christy O'Connor. During this hearing, Magistrate Judge Donahue presided over the hearing and entered a detention order from the bench (Dkt. 157) and later entered a written order (Dkt. 163).

13.    Prior to the May 8, 2025 hearing held in front of Judge Donahue, the parties engaged in extensive briefing and written submissions to the Court. Prior to the May 8, 2025, the government went back to the grand jury and obtained the Second Superseding Indictment, which added a second mandatory life imprisonment count of Stalking Resulting in Death, on May 1, 2025. (Dkt. 147).

14.    After Magistrate Judge Donahue entered the detention order on May 8, 2025, Mr. Banks filed an application for review/reconsideration of Magistrate Judge Donahue's order by the district court. (Dkt. 159, 162).

15.    On June 2, 2025, I appeared for Mr. Banks' detention hearing and a pretrial motion hearing in the Central District of California, along with my co-counsel Drew Findling and Christy O'Connor. (Dkt. 179-181). Attorney Craig Harbaugh appeared

1   with his client, Deandre Dontrell Wilson, for Mr. Wilson's arraignment and request to

2   join in Mr. Banks' motion for disclosure of grand jury transcripts.

3       16.     During this hearing, Judge Michael W. Fitzgerald presided over the hearing

4   and heard arguments from the parties on Mr. Banks' application for

5   review/reconsideration of Magistrate Judge Donahue's detention order and on

6   defendants' motion to produce grand jury transcripts, after which Judge Fitzgerald took

7   both motions under advisement. *Id.*

8       17.     On June 9, 2025, Judge Fitzgerald entered an order denying Mr. Banks'

9   application for review/reconsideration of Magistrate Judge Donahue's detention order.

10  (Dkt. 202). In Judge Fitzgerald's order, it references, cites, and quotes from Magistrate

11  Judge Donahue's May 20, 2025 written detention order. *Id.* (citing Dkt. 163, "MJ

12  Order," throughout Dkt. 202).

13      18.     On October 1, 2025, I attended a meet-and-confer with members of the

14  prosecution team in this case—Assistant United States Attorneys (AUSAs) Daniel

15  Weiner and Gregory Staples, who are AUSAs in the Central District of California and

16  assigned to the matter of *United States v. Durk Banks et al.*, No. 2:24-cr-621.

17      19.     During the October 1, 2025 meet-and-confer, the prosecution team

18  disclosed—for the first time—that both Magistrate Judge Patricia Donahue and AUSA

19  Ian Yanniello had been the victims of threats connected to this prosecution.

20      20.     AUSA Weiner stated that Magistrate Judge Donahue had received

21  threatening voicemails in February 2025 and that AUSA Yanniello had received a

22  threatening call in April 2025.

23      22.     This disclosure came more than seven months after the February 2025

24  threats and more than five months after the April 2025 threats, and only five days before

25  the deadline for the parties' pretrial motions, due on October 6, 2025.

26      23.     During the October 1, 2025 meeting, all defense counsel orally requested

27  full disclosure and production of relevant materials, including the underlying

28  recordings, investigative reports, communications between the United States Attorney's

1  Office, the FBI, and the United States Marshals Service, and any communications with

2  members of the bench or court staff concerning the threats.

3  24.    On October 1, 2025, the government made a discovery production that

4  included two FBI FD-1057 reports (which are included as Defendants' Exhibits 2 and 5

5  to the Joint Motion) and the four audio clips purporting to be the threatening voicemails

6  left for Judge Donahue (transcript of these voicemails is included as Exhibit 3 to

7  Defendants' Joint Motion).

8  25.    I created Defendants' Exhibit 3 based on my review of the four audio clips

9  produced by the government—purporting to be the voicemails left on Magistrate Judge

10  Donahue's work voicemail—and, to the best of my ability, transcribed the words and

11  sounds of the caller who made the threats against Judge Donahue, as contained in the

12  four audio clips produced to the defense by the government.

13  26.    When no further disclosure followed the October 1, 2025 production,

14  defense counsel memorialized their requests and demands for production in writing.

15  27.    On October 9, 2025, Attorney Shaffy Moeel, counsel for Defendant Asa

16  Houston, drafted and sent a letter via email, which was joined by counsel for Durk

17  Banks, Deandre Dontrell Wilson, and David Brian Lindsey, to the assigned AUSAs in

18  this matter—Ian V. Yanniello, Daniel H. Weiner, and Gregory W. Staples—demanding

19  complete disclosure of all information relating to the threats and any related

20  investigations.

21  28.    On October 14, 2025, I, along with my partners in this matter—Drew

22  Findling, Marissa Goldberg, and Christy O'Connor—sent a second letter via email to

23  AUSAs Yanniello, Weiner, and Staples—on behalf of our client, Durk Banks,

24  specifically identifying concerns unique to Mr. Banks' case and reiterating the defense's

25  request and demand for immediate production of all relevant materials to the threats and

26  resulting investigations.

27  29.    True and correct copies of the October 9 and October 14 letters are

28  attached hereto as Exhibits 1A and 1B respectively.

30.    On October 23, 2025, the government responded by letter via email to defense counsel for Banks, Wilson, Lindsey, and Houston. In that correspondence, the government acknowledged the threats and stated that some materials would be provided. The government, however, denied possessing any materials concerning its decision to withhold disclosure. A true and correct copy of the government's October 23, 2025 letter is attached hereto as Exhibit 1C.

31.    The government made a discovery production on October 23, 2025 with various partially or heavily redacted law enforcement reports and emails. Some of these materials are contained in Defendants' Group Exhibit 4, as well as Exhibits 6 and 7.

32.    The government's October 23, 2025 letter, at Exhibit 1C, omits Judge Donahue's involvement in this matter after December 2024. I have been in court for each of Mr. Banks' hearings and participated in extensive briefing and written filings in advance of the May 8, 2025 detention hearing and arraignment hearing before Magistrate Judge Donahue.

33.    At the time of the briefing, hearing, and ultimate detention orders, surrounding the May 8, 2025 detention hearing conducted by Magistrate Judge Donahue, no member of the prosecution team disclosed to Mr. Banks' attorneys, or any of the attorneys for Mr. Wilson, Mr. Lindsey, or Mr. Houston, that Magistrate Judge Donahue was the target of death threats explicitly referencing Mr. Banks and Mr. Wilson, or that the lead prosecutor, AUSA Ian Yanniello, had also been threatened.

34.    Both Magistrate Judge Donahue and Judge Fitzgerald continued to preside, and the government continued to litigate before them, without disclosure of those threats and their resulting criminal investigations.

35.    As of the date of this declaration, the defense has not received the complete investigative files, internal communications, or the recording of the April 28, 2025 phone call to AUSA Yanniello, pertinent to the threats, investigations, and communications surrounding them.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge.

Executed on November 13, 2025, in Chicago, Illinois.


DECLARANT FURTHER SAYETH NAUGHT.

 /s/ Jonathan M. Brayman

This 13th day of November 2025

*United States v. Grant et al.*
Case No. 2:24-cr-00621-MWF
Defendants' Joint Motion to Disqualify, Dismiss,
Indictment, Vacate Scheduling Order, Reopen Pretrial
Hearings, and Hold Evidentiary Hearing, Based on Fifth and
Sixth Amendment Violations

# EXHIBIT 1A

MOEEL LAH FAKHOURY

2006 Kala Bagai Way, Suite 16
Berkeley, CA 94704
(510) 500-9994
shaffy@mlf-llp.com

October 9, 2025                                          <u>Via E-Mail</u>

Assistant United States Attorney
Daniel Weiner
Ian Yanniello
United States Attorney's Office
312 North Spring Street
Los Angeles, California 90012

RE: <u>24-CR-621-MWF</u>, *United States v. Grant et al*.

Dear Counsel:

I write on behalf of my client, Mr. Asa Houston, and all of the defendants in the above-referenced matter who are set for trial on January 20, 2026.

On October 1, 2025 during a court-ordered meet and confer regarding the upcoming pre-trial motions deadline, the government revealed to the defense—for the first time—that the magistrate judge presiding over this case and Mr. Ian Yanniello of the prosecution team had received credible threats related to the instant prosecution of the defendants. The government further revealed that these threats—made against Judge Donahue and Mr. Yanniello—were made back in February 2025. The government indicated that it would produce discovery related to these threats and their investigation relevant to the government's motion for an anonymous jury. The defense made oral requests for discovery related to the government's investigation of the threats and its decision to delay disclosure of this investigation for five months while the parties continued to litigate this case before the very judicial officer and prosecuting attorney responsible for its fair and unbiased outcome. To date, the government has produced only the bare minimum of information related to the threats and has not produced any of the requested information, outlined further in writing below.

Pursuant to Fed. R. Crim. P. 16(a)(1)(E), *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Court's supervisory authority, the defendants respectfully request production of all documents, communications, and records concerning the threats made against the Judge Donahue and Mr. Yanniello during the pendency of this case and the subsequent investigation, evaluation, and handling of those threats by the U.S. Attorney's Office, the FBI, the U.S. Marshals Service, and any other component of the Department of Justice or the federal judiciary. This discovery is necessary to determine when each governmental entity learned of the threat, what actions were taken, and why the information was

MOEEL LAH FAKHOURY

2006 Kala Bagai Way, Suite 16
Berkeley, CA 94704
(510) 500-9994
shaffy@mlf-llp.com

withheld from the defense for more than five months—all of which bear directly on potential motions to dismiss or reassign and on the defendants' constitutional right to a fair and impartial tribunal.

Under Rule 16(a)(1)(E), the government must produce items "material to preparing the defense." Evidence bearing on judicial bias, appearance of impartiality, or prosecutorial nondisclosure is material under *United States v. Olsen*, 704 F.3d 1172, 1182 (9th Cir. 2013). Moreover, *Brady* and *Giglio* require disclosure of information affecting "any issue of fairness in the proceeding," not just evidence going to guilt. *Id.* Courts also recognize a duty of disclosure regarding facts that "might reasonably call a judge's impartiality into question." *United States v. Sibla*, 624 F.2d 864, 868 (9th Cir. 1980).

This discovery is essential to evaluating motions under 28 U.S.C. § 455(a) and to ensure compliance with *Brady* and *Giglio*. The withheld information goes to the core of the defendants' structural due-process right to an impartial tribunal. Because only the government and its investigative arms possess this information, defense access through discovery is the sole mechanism for a meaningful record.

Defendant requests that the government produce, or identify for in-camera inspection, the following:

1. Threat Identification and Initial Reports
   o Any document, report, email, memorandum, or communication memorializing or referring to the threats made against Judge Donahue and Mr. Yanniello including but not limited to FBI 302s, incident reports, and threat assessments.
   o The date and manner in which the threat was first reported to the U.S. Attorney's Office and the judiciary.

2. Internal Communications Within the U.S. Attorney's Office
   o All internal DOJ or USAO communications (emails, memos, Teams/Slack messages, text messages, or notes) concerning the threat, its seriousness, or potential case impact.
   o Communications between line AUSAs, supervisors, the Criminal Chief, the First Assistant, or the U.S. Attorney regarding whether and when to disclose the threat to the defense or the Court.

3. Inter-Agency Communications
   o Communications among the U.S. Attorney's Office, the FBI, the U.S. Marshals Service, the Administrative Office of the U.S. Courts, or any court security officers concerning:
     ▪ Investigation of the threat;

MOEEL LAH FAKHOURY

2006 Kala Bagai Way, Suite 16
Berkeley, CA 94704
(510) 500-9994
shaffy@mlf-llp.com

- Protective measures for the judge or courthouse; and
- Any discussion of disclosure obligations or recusal implications.

4. Judiciary-Related Communications
   o Correspondence, memoranda, or notes reflecting communications between the
     presiding judge (or chambers staff) and any representative of the DOJ, U.S.
     Marshals, or court security officers about the threat.
   o Records of any communications by the Clerk's Office, Court Security Officers, or
     Administrative Office personnel concerning the threat or related security actions.

5. Timeline and Decision-making Materials
   o Any written chronology, email chain, or internal memorandum identifying when
     each agency became aware of the threat and what decisions were made regarding
     disclosure.
   o Drafts or final versions of any talking points, press materials, or written
     summaries concerning the threat.

6. FBI and U.S. Marshals Investigation Files (to the extent not classified)
   o Reports of interviews, investigative findings, or recommendations relevant to the
     threat, its source, or whether defendants or their associates were suspected.

7. Disclosure and Notification Records
   o All documents reflecting when, how, and by whom the judiciary or the U.S.
     Attorney's Office decided *not* to inform the defense.
   o Records of any subsequent communications reversing that decision or preparing
     for disclosure.

8. Security Measures and Risk Assessments
   o Non-classified documents showing what physical or procedural security measures
     were implemented as a result of the threat (for context on how seriously it was
     taken).

9. Any Other Material
   o Any record, note, or communication that tends to show or contradict (a) when the
     government and judiciary became aware of the threat, or (b) what steps were
     taken in response.

We ask that you produce the above materials within 2 weeks of this request.  If there is a dispute
about the discoverability of the requested materials, we would like to have sufficient time to file
a discovery motion so that it could be heard by the November 18th motion hearing.

**MOEEL LAH FAKHOURY**

2006 Kala Bagai Way, Suite 16
Berkeley, CA 94704
(510) 500-9994
shaffy@mlf-llp.com

The gravity of a credible threat against a sitting federal judge and federal prosecutor cannot be overstated; such an event strikes at the heart of public confidence in the fairness and transparency of our justice system. Yet the equal gravity lies in the government's failure to timely disclose it—an omission that not only deprived the defense of critical information bearing on judicial impartiality but also potentially endangered the safety of the defendants and counsel. These circumstances jeopardize the integrity of the proceedings and the defendants' right to a fair and public trial. We therefore ask that you treat this request with the utmost seriousness and provide full disclosure of the materials described above without delay.

Sincerely,

Shaffy Moeel
MOEEL LAH FAKHOURY LLP
Attorneys for Mr. Houston

/s/
Drew Findling
Marissa Goldberg
Jonathan M. Brayman
Christy O'Connor
Attorneys for Mr. Banks

/s/
Craig A. Harbaugh
HAURBAUGH LAW
Attorney for Mr. Wilson

/s/
Tillet J. Mills II
Attorney for Mr. Lindsay

*United States v. Grant et al.*
Case No. 2:24-cr-00621-MWF
Defendants' Joint Motion to Disqualify, Dismiss,
Indictment, Vacate Scheduling Order, Reopen Pretrial
Hearings, and Hold Evidentiary Hearing, Based on Fifth and
Sixth Amendment Violations

# EXHIBIT 1B

# BREEN PUGH
Breen & Pugh Attorneys at Law

Thomas M. Breen
Todd S. Pugh
Jonathan M. Brayman
Robert W. Stanley
Chelsy L. Van Overmeiren
Christopher W. Dallas

Telly Stefaneas
Of Counsel

THE MONADNOCK BUILDING
53 WEST JACKSON BOULEVARD
SUITE 1550
CHICAGO, ILLINOIS 60604

TELEPHONE: (312) 360-1001
FACSIMILE: (312) 362-9907
www.breenpughlaw.com

October 14, 2025

Daniel Weiner
Ian Yanniello
Gregory Staples
Assistant United States Attorneys
312 North Spring St.
Los Angeles, CA 90012

RE:     *United States v. Grant*, Case No. 24-cr-621-MWF

Dear Counsel:

This letter is a follow-up to Ms. Moeel's correspondence regarding credible threats made to the judiciary and to Mr. Yanniello. On behalf of Mr. Banks, we join in that letter and the discovery requests therein. We write here because there are additional issues related to those threats that affect Mr. Banks singularly and that warrant serious attention, both from your Office and potentially from the courts.

It has been the government's repeated refrain: Mr. Banks enlists others to threaten violence and to do violence for Mr. Banks' own benefit. He has even done so, you have repeatedly argued, in order to influence the outcome of this very case.

But it is not just that the government has repeated that allegation at every turn. You have also asked two federal judges to rely upon its truth in making important decisions—about whether Mr. Banks should be detained pretrial, and about whether releasing grand jury transcripts would endanger witness safety (it would, the government argued) or inhibit unbiased participation in this case going forward (again, you argued yes).

All the while, the prosecution team knew that one of those judges, Magistrate Judge Donahue, had received threats herself. More specifically, on February 22, 2025, Judge Donahue received four different voicemails that contained violent threats to her safety and the safety of courthouse personnel, referencing Mr. Banks by name. They contained reference to mass destruction and mimicry of gunfire, directly tied to the possibility of an adverse result for Mr. Banks in this matter.

In other words, the judge whose job it was to assess the credibility of accounts of threats made by others for Mr. Banks' benefit—to determine whether those threats actually happened, whether they should be taken seriously, and whether they evidence Mr. Banks' dangerousness—had personally received violent threats of the same ilk.

Over two months after Judge Donahue was threatened, on April 28, 2025, another individual made threats of violence directed at Assistant United States Attorney (AUSA) Ian Yanniello, the lead prosecutor in this matter for the United States Attorney's Office (USAO), as well as threats of violence directed at the safety of courthouse/USAO personnel, during a phone call to AUSA Yanniello at the USAO. The phone call contained an explicit death threat to AUSA Yanniello and threatened the safety of everyone who worked at the courthouse and the USAO.

It is unclear (at least to us) whether the magistrate judge knew about the threats against Mr. Yanniello when she denied Mr. Banks' bond request. Nor do we know whether the district court was made aware of the threats to the magistrate or prosecution when the court found that Mr. Banks' pretrial release would endanger those who may participate in this case. We do know, though, that the district court's decision relied on Judge Donahue's finding (made, of course, after she was threatened) that Mr. Banks "uses his money, influence and power to endanger individuals whom he perceives as a threat."[1] Despite our requests during the October 1st meet-and-confer, to date, we still lack answers.

What makes this all the worse is that the prosecution took measures to withhold information about the threats from defense counsel, even in the face of defense counsel's direct questioning. On August 6, 2025, in discussing the government's contemplated motion for an anonymous jury, the prosecution team cited (1) past acts of violence directed towards cooperating witnesses in unrelated cases in the Central District of California; (2) threats to cooperating witnesses in this case; and (3) specific mentions of cooperating witness PW-2 on social media as being a cooperating witness in this case. On August 13, when Ms. Moeel asked the government whether there was something specific to this case that created a particularized need for an anonymous jury, AUSA Yanniello responded that he was somewhat "confused" by the question. He went on to cite to evidence that the government had already produced to the defense. No prosecutor mentioned the threats.

The government has called the threats here credible and serious. You have pointed to their power to incite fear and to prevent unbiased participation in this prosecution. One witness' family members have been relocated because of them. Most recently, you have cited them as grounds to hide from Mr. Banks—and the entire defense team—the identities and jobs of the jury to which he is Constitutionally-entitled. And you have repeatedly attributed threats made by others to Mr. Banks' puppetry, even without any proof that he had a hand in making them.

Yet the prosecution team sat by while Judge Donahue presided over Mr. Banks' May detention hearing, knowing she had been victimized herself by threats just like the ones upon which the government rested its detention request. As you know (or should know), the law requires a judge to disqualify herself if she has a personal bias or prejudice concerning a party, or if she has personal knowledge of disputed evidentiary facts concerning the proceeding at issue. But the duty to recuse goes beyond just that, and a judge must step aside at the mere *appearance* of such a bias, or any time her impartiality might reasonably be questioned. [2] When you stayed quiet, knowing that Judge

---

[1] Dkt. No. 202 at 4 (citing MJ Order at 4).

[2] 28 U.S.C. § 455(a), (b)(1); *accord* Canon 3(C)(1) of the Code of Conduct for United States Judges. "If it is a close case, the balance tips in favor of recusal." *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008) (citing *United*

Donahue had been the victim of violent threats seemingly intended to influence Mr. Banks' case, at the very least, you failed to ensure that that law was followed.

This choice, to keep the defense in the dark, is in stark contrast to your approach to the *de minimis* involvement of Judge Fitzgerald's brother, retired AUSA Patrick Fitzgerald, in the management of this prosecution.[3] There, prosecutors went to great lengths to ensure that parties had a full and fair opportunity to raise any concerns they may have about Judge Fitzgerald's impartiality. The same process should have been followed here, but was not.

What is more, it appears to us that Mr. Yanniello has continued to be involved in every facet of this prosecution, every decision that has been made, despite being victimized himself by threats that he purports to take very seriously. This is despite the exacting ethical standards to which Assistant United States Attorneys are held, including with respect to both actual and apparent conflicts of interest.[4]

And finally, it also appears that the government, including through its Case Agent, has had *ex parte* communications with Magistrate Judge Donahue (at the very least) regarding the threats, a topic at the heart of the government's argument in favor of Mr. Banks' continued detention.[5]

In light of all of this, Mr. Banks and his attorneys renew the demand for full and immediate disclosure of all materials and communications concerning threats to judicial officers, prosecutors, and courthouse/USAO personnel in this matter, as well as all internal discussions regarding how and when to disclose those credible threats, and reserves the right to seek appropriate relief,

---

*States v. Dandy,* 998 F.2d 1344, 1349 (6th Cir. 1993)). *Accord In re Nettles*, 394 F.3d 1001, 1002-03 (7th Cir. 2005) (recusal of all district court judges in district was required because defendant had been accused of planning to bomb the building in which the district court judges worked); *United States v. Greenspan*, 26 F.3d 1001,1007 (10th Cir. 1994) ("Congress has mandated that justice must not only be impartial, but also that it must reasonably be perceived to be impartial.") (citing 28 U.S.C. § 455(a) and *Liljeberg v. Health Servs. Corp*., 486 U.S. 847, 859-60 (1988) (the purpose of § 455(a) is "to promote public confidence in the integrity of the judicial process.")). *Compare Holland*, 519 F.3d at 916 (finding no plain error in failure to recuse where the court did not consider threat serious enough to refer the incident to the FBI or to request additional security). *See also, e.g.,* Kelleher, Jennifer Sinco, *Honolulu bribery trial won't be postponed despite an investigation into a threat against a U.S. judge*, Legal News (March 01, 2024) *https://www.legalnews.com/Home/Articles?DataId=1541972.*

[3] Dkt. No. 223-225.

[4] *See, e.g., United States v. Miller*, 953 F.3d 1095, 1104, 1105 (9th Cir. 2020) (holding that prosecutorial conflict of interest had no material effect on the case because the DOJ immediately "took every step it could reasonably have been expected to take" to cleanse the prosecution team of any possible taint, including recusing the entire USAO for the Central District of California from the prosecution) (citing United States Attorneys' Manual (USAM) § 1-4.320(F), USAM § 3-2.170, USAM § 9-27.260(A)(3); *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991) (prosecutor may violate a defendant's due process rights through conduct that "is so grossly shocking and so outrageous as to violate the universal sense of justice") (quoting *United States v. O'Connor*, 737 F.2d 814, 817 (9th Cir. 1984)); *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 802-814 (1987) (reversing convictions based on a conflicted prosecutor); *United States v. Chatman*, 524 U.S. 1073, 1084-88 (9th Cir. 2008).

[5] California Bar Rules prohibit both direct and indirect communication with a judge regarding a contested matter pending before the judge, except in open court, with the consent of all counsel, in the presence of all counsel, or in writing, with a copy furnished to all other counsel. Cal. Rules of Prof'l Conduct R. 3.5.

including recusal, dismissal, or other remedies necessary to restore integrity to these proceedings.[6]
Anything less would perpetuate the harm that has already been done, and further erode public trust
in this prosecution and in the justice system itself.

Sincerely,

/s/ Drew Findling

/s/ Marissa Goldberg

/s/ Jonathan M. Brayman

/s/ Christy O'Connor

---

[6] As requested orally during the October 1, 2025 meet-and-confer, we demand all information, documentation, and
correspondence relating to the threats received by the judiciary, the USAO, and courthouse/USAO personnel, along
with information relating to the decision-making processes of personnel from the United States Attorney's Office for
the Central District of California, the USAO's Professional Responsibility Advisory Office, Main Justice, and any
other governmental entity pertaining to the threats at issue here.

4

*United States v. Grant et al.*
Case No. 2:24-cr-00621-MWF
Defendants' Joint Motion to Disqualify, Dismiss,
Indictment, Vacate Scheduling Order, Reopen Pretrial
Hearings, and Hold Evidentiary Hearing, Based on Fifth and
Sixth Amendment Violations

# EXHIBIT 1C



# United States Department of Justice

## United States Attorney's Office
## Central District of California

---

Ian V. Yanniello/Gregory W. Staples/Daniel H. Weiner
Phone:  (213) 894-3667/0813
E-mail: ian.yanniello@usdoj.gov/greg.staples@usdoj.gov/
          daniel.weiner@usdoj.gov

1400/1500 United States Courthouse
312 North Spring Street
Los Angeles, California  90012

October 23, 2025

**VIA E-MAIL**

| | |
|---|---|
| Drew Findling<br>Marissa Goldberg<br>The Findling Law Firm PC<br>3575 Piedmont Road, NE, Tower 15<br>Suite 1010<br>Atlanta, GA 30305<br>Email: drew@findlinglawfirm.com<br>Email: marissa@findlinglawfirm.com<br><br>*Counsel for Durk Banks* | Tillett J. Mills, II<br>Law Office of Tillet J. Mills II PLLC<br>4101 Greenbriar, Suite 210<br>Houston, TX 77098<br>Email: tillet@tilletjmills.com<br><br><br><br>*Counsel for David Lindsey* |
| Jonathan M. Brayman<br>Breen and Pugh<br>53 W. Jackson Boulevard, Suite 1550<br>Chicago, IL 60604<br>Email: jbrayman@breenpughlaw.com<br><br>*Counsel for Durk Banks* | Robert A. Jones<br>Robert A. Jones PC<br>4101 Greenbriar, Suite 210<br>Houston, TX 77098<br>Email: office.rajoneslaw@gmail.com<br><br>*Counsel for David Lindsey* |
| Christy O'Connor<br>The Law Office of Christy O'Connor<br>360 East 2nd Street, Suite 800<br>Los Angeles, CA 90012<br>Email: christy@christyoconnorlaw.com<br><br>*Counsel for Durk Banks* | Craig A. Harbaugh<br>Harbaugh Law, PC<br>360 E. 2nd Street, Suite 800<br>Los Angeles, CA 90012<br>Email: craig@harbaugh.law<br><br>*Counsel for Deandre Wilson* |
| Shaffy Moeel<br>Moeel Lah Fakhoury LLP<br>2006 Kala Bagai Way, Suite 16<br>Berkeley, CA 94704<br>510-500-9994<br>Email: shaffy@mlf-llp.com<br><br>*Counsel for Asa Houston* | |

RE:  United States v. Durk Banks, et al., CR No. 24-621(B)-MWF
October 23, 2025
Page 2


          Re:    United States v. Durk Banks, et al., CR No. 24-621(B)-MWF

Dear Counsel:

We have reviewed your letters dated October 9 and 14, 2025 requesting additional discovery related to the voice messages left for Magistrate Judge Donahue in February 2025 and the phone call AUSA Yanniello received in April 2025.  Based on your request, we will provide additional material that exceeds the government's discovery obligations.

Specifically, after a reasonable and diligent search, the government has identified and produced redacted FBI reports regarding investigations into the threats (Requests #1 and #6)[1], and communications between the prosecution team (the FBI and the U.S. Attorney's Office) and outside parties (the USMS, court personnel, and the Illinois Department of Corrections). (Requests #3 and #4).[2]

Other materials requested in the letters have not been produced, either because: (i) after a reasonable and diligent search, those materials do not exist; (ii) any such materials are not in the prosecution team's possession, custody, or control; and/or (iii) the defense is not entitled to those materials.

First, the U.S. Attorney's Office has no materials about withholding information from the defense about the threats to the magistrate judge or prosecutor, including "what decisions were made regarding disclosure" of the threats, any discussion regarding recusal based on the threats, any "talking points, press materials, or written summaries concerning the threat," and any documents reflecting any decision "not to inform the defense" about the threats.  (Requests #2, #3, #5 and #7).  Even assuming those documents existed, the defense is not entitled to any internal communications within the U.S. Attorney's Office bearing on the deliberative process in this case.  Nor has the defense cited authority to support your apparent position that the government was required to provide immediate notice concerning the subject matter of ongoing and active investigations.  As noted below, once the investigations were complete and the government determined the threats were relevant to the government's motion seeking an anonymous jury, the government promptly produced discovery to you.

---

     [1] As reflected in the produced discovery, the U.S. Attorney's Office was first made aware of the threat to Judge Donahue on February 25, 2025 by e-mail.  The October 9th letter incorrectly states that AUSA Yanniello received the threatening phone call in February 2025.  As reflected in produced FBI reports, that phone call occurred on April 28, 2025.

     [2] The government has redacted the names/identifying information of the subjects of the investigations, as their identity does not bear on any fact relevant to preparing your defense in this murder-for-hire and stalking case.  To the extent any further investigation yields evidence of your clients' relationship with these subjects, the government will reevaluate its position on the discoverability of this information.

RE: <u>United States v. Durk Banks, et al.</u>, CR No. 24-621(B)-MWF
October 23, 2025
Page 3

Second, the prosecution team does not have possession, custody, or control of materials in the possession of the USMS or the court, as neither of those entities are part of the prosecution team. (Requests #4, #6, #7, and #8). Moreover, the defense is not entitled to any materials, to the extent they exist, describing the "security measures and risk assessments" taken because of the threats. (Request #8). Disclosure of such materials would be wholly improper, as dissemination would further jeopardize any responsive security measures.

*     *     *

This response also corrects certain false and/or misleading facts and representations in your letters.

First, the assertion that Judge Donahue's finding that Mr. Banks "uses his money, influence, and power to endanger individuals whom he perceives as a threat" was made *after* she received the February 2025 voice messages is incorrect. That finding was made in December 2024, as clearly set forth in the written order detaining Mr. Banks. *See* Dkt. 116 at 4. The district court issued a similar finding when it ordered Mr. Banks detained on June 9, 2025.

Second, your repeated assertions that the government deemed the threats credible conflates the threats to cooperating witnesses and their family members with the threats made to the magistrate judge and prosecutor. For example, your letters advocate that the threats to Magistrate Judge Donahue and AUSA Yanniello created a credible risk of safety to defense counsel and "threatened the safety of everyone who worked at the courthouse and the USAO." October 14 letter at 2; <u>see</u> also October 9 letter at 4. However, at no time was there any information of a security risk to anyone on the defense side or any other courthouse personnel. Nor does it make any sense that there would be, since the threats were directed at persons believed to be harming the defendants in this case, and made by individuals who invoked sympathy for the defendants. Should there be such a threat to any defendant or defense counsel, we would, of course, notify you immediately.

Third, the government's disclosure to Judge Fitzgerald regarding AUSA Fitzgerald's *de minimis* involvement in this case is entirely inapplicable to the government's decision to disclose the communications at issue. The disclosure made to Judge Fitzgerald was to inform the court of facts known to the government, so that the court could evaluate its recusal under statute and judicial canons of ethics. *See United States v. Sibla,* 624 F.2d 864, 867-68 (9th Cir. 1980) (Section 455 "is directed to the judge, rather than the parties, and is self-enforcing on the part of the judge."). The government produced information about the threats received by the magistrate judge and one of the prosecutors to defense counsel once (1) the investigations were complete and (2) the threats became discoverable because the government made the decision to reference them in the motion for an anonymous jury. After that decision was made, we made a timely disclosure to you, prior to filing the motion.

Your allegation that the government "failed to ensure that the law was followed" with respect to the threat to the magistrate judge is unfounded. As noted, under Section 455, the judge herself is

RE:  <u>United States v. Durk Banks, et al.</u>, CR No. 24-621(B)-MWF
October 23, 2025
Page 4


obligated to determine whether she should recuse herself.  You offer no basis to believe that was
not done in this case.

Finally, the suggestion that the government was purportedly required to provide the defense with
immediate updates about investigations into threats and/or improper attempts to influence
individuals connected to this case is wrong.  As the discovery in this case makes clear, there have
already been alleged attempts to influence witness testimony by members or associates of
OTF.  And as described above, the government produced materials to the defense when they
became discoverable, *i.e.*, when the government decided to raise the threats in a motion.[3]

Please let us know if you have any questions, or would like to further discuss any of the matters
raised above.

Very truly yours,

/s/

IAN V. YANNIELLO
GREGORY W. STAPLES
DANIEL H. WEINER
Assistant United States Attorneys

---

[3] We also note that your citations to California Bar Rules and inuendo to suggest the government
violated its ethical and legal duties is unfounded and wrong.  As the discovery shows, an AUSA
in a separate section was assigned to assist in the investigation of the threat to AUSA Yanniello.